## DELIA DEVINE *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.   March 16, 17, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Master and Servant — Negligence — Exceptions.*

In an action under St. 1887, c. 270, against a railroad corporation, for personal injuries occasioned to the plaintiff, while in the employ of the railroad as a car cleaner, by being thrown over a seat in consequence of the car in which she was working striking a bunting post with unusual force, the plaintiff testified that " when they hit the bunting post the cars went right up against each other, the two ends next each other went right up, and then fell down on the track again," and she was thrown over the seat. A division superintendent on the railroad, called as a witness by the defendant, testified, on direct examination, that " the car struck the post because there had been too much momentum for the space there was to stop in "; that he saw the brakeman putting on the brake, and he seemed to be winding it up as hard as he could; that he expected the car would strike before it struck; and that it was going faster than it should. On cross-examination, he testified that " he expected there would be a bump when he saw the train approaching the post." On the re-cross of the re-direct examination, he said that " the supposition was that the brakeman would stop them before they reached the post; but he thought the momentum was such that he could not, and that he was one car length from the post before he applied the brake." On further re-direct examination, he said that " if the brakeman had put the brake on earlier it would have stopped them ; that the brakeman should begin to wind up the hand brake at a suitable distance to stop the cars before they get to the end of the track, and that his judgment was to determine where he should begin." The brakeman testified that he was suspended from his duty as brakeman for two weeks immediately after this accident. There was evidence tending to show that, after the train had come in and the passengers had got out, the conductor took charge of it for the purpose of distributing the cars of which it was made up to the different tracks, and directed where they should be put. He testified that he gave the stop motion to the first three cars that were detached from the train ; that he gave the kick motion for the two that struck the bunting post, but did not remember whether he gave the stop motion for them or not; and nobody appeared to remember who gave the stop motion for these two cars. It appeared, from the testimony of the engineer and conductor, that the stop motion was usually given by the conductor ; and, from the testimony of the conductor, that, when the two cars were kicked on to the stub track, he stood at the switch. It was also testified that the switchman sometimes gave the motion ; and there was also testimony from the defendant's witnesses that nothing out of the usual way was done on the morning of the accident. The jury were instructed, in substance, that, if the accident was due to the negligence of the brakeman in failing to stop the cars, the plaintiff could not recover; and that, in order to entitle her to recover, it must

appear that the accident was due to the negligence of the engineer or that of the conductor. *Held*, that the defendant had no ground of exception.

In an action under St. 1887, c. 270, against a railroad corporation for personal injuries occasioned to the plaintiff, while in the defendant's employ as a car cleaner, by being thrown over a seat in consequence of the car in which she was working striking a bunting post with unusual force, it appeared that two cars of a train struck the post; and there was evidence tending to show that, after the train had come in and the passengers had got out, the conductor took charge of it for the purpose of distributing the cars of which it was made up to the different tracks, and directed where they should be put. The judge instructed the jury, in substance, that if the conductor had charge of the train, and the purpose was to put these cars where they were finally placed, and he carelessly directed how the engine should operate against them, and they were sent with too much force so that the brakeman could not stop them, and that was the cause of the injury, then the accident was due to the negligence of a person in charge of a train, even though at the moment when the cars struck the post they were separated. *Held*, that the defendant had no ground of exception.

An excepting party fails to satisfy this court that he has been injured by instructions requested by the adverse party, which the presiding justice of the Superior Court may have supposed that he gave, but which do not appear in fact to have been given to the jury, or read or stated in its hearing.

TORT, under St. 1887, c. 270, for personal injuries occasioned to the plaintiff, while in the defendant's employ as a car cleaner, by being thrown over a seat in consequence of the car in which she was working striking a bunting post with unusual force. At the trial in the Superior Court, before *Sherman, J.,* the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in March, 1893, and afterwards was submitted on the briefs to all the judges.

*Samuel Hoar,* for the defendant.

*J. A. McGeough,* for the plaintiff.

MORTON, J. The jury were instructed, in substance, that if the accident to the plaintiff was due to the negligence of the brakeman Emery in failing to stop the cars, then the plaintiff could not recover ; and that, in order to entitle her to recover, it must appear that the accident was due to the negligence of the engineer Lancaster, or that of the conductor O'Brien. The jury returned a verdict for the plaintiff, and must therefore have found that the accident was not due to the negligence of Emery, and was due to the negligence of the engineer or conductor. There was evidence from which the jury were clearly justified in finding that the car in which the plaintiff was,

struck the bunting post with unusual force, and so as to throw the plaintiff down and cause the injury of which she complains. The plaintiff testified that " when they hit the bunting post the cars went right up against each other, the two ends next each other went right up, and then fell down on the track again," and she was thrown over the seat. It is true there was testimony tending quite strongly to show that the collision was not as violent as she described it, but that was a question for the jury. One Barnes, a division superintendent on the defendant's railroad, called as a witness by the defendant, testified, on the direct examination, that " the car struck the post because there had been too much momentum for the space there was to stop in," and, on cross-examination, that " he expected there would be a bump when he saw the train approaching the post." And Emery, the brakeman, testified that he was suspended from his duty as brakeman for two weeks immediately after this accident; from which the jury might reasonably infer that something in the nature of what the plaintiff and Barnes thus described actually took place.

The defendant contends, however, that on the whole evidence the jury were not justified in finding that the accident was not due to the negligence of Emery, and was due to the negligence of the engineer or conductor. But, in addition to his testimony already referred to, Barnes testified that he saw the brakeman putting on the brake, and he seemed to be winding it up as hard as he could; that he expected the car would strike before it struck, and that it was going faster than it should. On cross-examination, as already observed, he said he expected there would be a bump when he saw the train approaching the post. On the re-cross of the re-direct examination he said that " the supposition was that the brakeman would stop them before they reached the post; but he thought the momentum was such that he could not, and that he was one car length from the post before he applied the brake." On a still further re-direct examination he said that " if the brakeman had put the brake on earlier it would have stopped them, that the brakeman should begin to wind up the hand brake at a suitable distance to stop the cars before they get to the end of the track, and that his judgment was to determine where he should begin." The jury,

however, may have thought that the earlier portion of the testimony of the witness was more to be relied on than the later. If that were so, then they were justified in finding, if they did so find, that the accident was due to the giving by the engineer of too great momentum to the cars for the space they were to stop in.

As to the conductor, O'Brien, there was testimony tending to show that after the train had come in and the passengers had got out he took charge of it, for the purpose of distributing upon the different tracks the cars of which it was made up, and directed where they should be put. He gave the stop motion, as he himself testified, to the first three cars that were detached from the train. He also testified that he gave the kick motion for the two that struck the bunting post; but he does not seem to remember whether he gave the stop motion for them that morning or not. Nobody appears to remember who gave the stop motion that morning for these two cars. It appears from the testimony of the engineer and conductor that the stop motion was usually given by the conductor. It also appears from the testimony of the conductor that when the two cars were kicked on to the stub track he stood at the switch. It is not unreasonable to suppose that that was a place from which the stop motion could be easily given. It is said that the switchman sometimes gave the motion, but naturally he would not give it with the conductor at the switch. There was also testimony on the part of some of the defendant's witnesses that nothing out of the usual way was done that morning. We think, under all the circumstances, it would not have been unwarrantable for the jury to infer that the stop motion on the morning in question was given by the conductor. If so, and if the jury also found, as Barnes testified, that the cars struck the post because there was too much momentum for the space there was to stop in, and that the momentum was such that the brakeman could not stop them, then the jury might also find that the excessive motion was due either to the negligence of the engineer in giving too great speed to the cars, or to the failure of the conductor to give the stop motion soon enough. In either case the defendant would be liable.

The defendant excepted, in the language of its counsel, to so much of the charge as " ruled that the two cars that were actu-

ally separated from the engine at the time they hit the post were a train within the meaning of the statute." We do not understand the court to have ruled so. What the court did say in substance was, that if O'Brien had charge of the train, and the purpose was to put these cars where they were finally placed, and he carelessly directed how the engine should operate against them, and they were sent with too much force so that the brakeman could not stop them, and that was the cause of the injury, then the accident was due to the negligence of a person in charge of a train, even though at the moment when the cars struck the post they were separated. So construed, the instruction was correct.

The learned counsel for the defendant has failed to satisfy us that his client was injured by instructions requested by the plaintiff, which the court may have supposed it gave, but which do not appear in fact to have been given to the jury, or read or stated in its hearing.

A majority of the court is of opinion that the entry must be,

*Exceptions overruled.*