On Application for Rehearing

MURDOCK, Justice.
This Court’s opinion of June 3, 2011, is withdrawn, and the following is substituted therefor.
We granted Capstone Building Corporation’s petition for a writ of certiorari to review the decision of the Court of Civil Appeals in Walker v. Capstone Building Corp., 96 So.3d 71 (Ala.Civ.App.2010), in which the Court of Civil Appeals, relying upon this Court’s decision in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), applied a six-year statute of limitations to a claim of wantonness. In McKenzie, this Court held that a tort claim based on allegations of wanton misconduct was subject to the six-year statute of limitations found in Ala. Code 1975, § 6-2-34(1), rather than the two-year statute of limitations found in Ala.Code 1975, § 6-2-38(l). We hereby overrule McKenzie and confirm that claims of wantonness are subject to the two-year statute of limitations found in Ala.Code 1975, § 6-2-38(1). Consistent with this holding and as further explained below, we reverse the judgment of the Court of Civil Appeals.

I. Facts and Procedural History

The pertinent facts as stated in Walker are as follows:
“[William ‘Toby’] Walker filed an action against Capstone and several fictitiously named parties on July 10, 2007. He alleged that Capstone had been the general contractor on a construction job on which he had worked. Walker alleged that, on July 12, 2005, while working at the construction site, he stepped on a manhole cover, which flipped over, causing him to fall partially into the manhole and causing him serious injury. He asserted that Capstone had been responsible for providing a safe work environment at the site but that it had failed in that responsibility. Walker alleged that Capstone previously had been made aware that the manhole cover that had flipped over was not properly secured and was unsafe because of a previous accident involving the same manhole cover. He alleged that Capstone’s failure to properly secure the manhole cover constituted negligence or wantonness.
“On April 20, 2009, Capstone filed a motion to dismiss or, in the alternative, for a summary judgment. It contended that the evidence developed during discovery demonstrated that the incident giving rise to Walker’s action occurred on June 6, 2005, not on July 12, 2005, as alleged in the complaint. As a result, Capstone argued, Walker’s claims alleging negligence and wantonness were barred by the two-year statute of limitations set forth in § 6-2-38, Ala.Code 1975. In support of its motion, Cap *80 stone submitted, among other things, the incident report generated as a result of the accident forming the basis of Walker’s action, deposition excerpts, and affidavits. Walker filed a response to Capstone’s motion in which he argued that there was a question of fact as to when the incident occurred and that, even if his negligence claim was barred by the applicable statute of limitations, his claim of wantonness was, he maintained, subject to a six-year statute of limitations that had not run at the time he filed his action.
[[Image here]]
“On August 10, 2009, the trial court granted Capstone’s motion and entered a summary judgment in its favor.”
96 So.3d at 71-72.
Walker appealed to the Court of Civil Appeals, arguing that the six-year statute of limitations found in § 6-2-34(1) applied to his claim alleging wantonness:[1]
“Walker contends that the statute of limitations applicable to wantonness claims is set forth in § 6-2-34(1), Ala. Code 1975, which provides that ‘[ajctions for any trespass to person or liberty, such as false imprisonment or assault and battery,’ are subject to a six-year statute of limitations. He argues that, because it is undisputed that his action was filed within six years of the date on which he was allegedly injured, the trial court erred when it entered a summary judgment in favor of Capstone as to his wantonness claim. In asserting that argument, Walker relies on our supreme court’s decisions in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), and Carr v. International Refining & Manufacturing Co., 13 So.3d 947 (Ala.2009) (plurality opinion).”
96 So.3d at 72-73 (footnote omitted).
After discussing the decisions in McKenzie and Carr v. International Refining & Manufacturing Co., 13 So.3d 947 (Ala.2009), the Court of Civil Appeals continued:
“In the present case, Walker alleged that Capstone acted with wantonness and, in so doing, caused his personal injuries. Based on the holding in McKenzie and the plurality opinion in Carr, we must conclude that Walker’s wantonness claim is governed by the six-year statute of limitations applicable to trespass claims, rather than the two-year statute of limitations the trial court applied. As such, the trial court’s summary judgment with regard to Walker’s wantonness claim is due to be reversed.
“We note Capstone’s argument that, if McKenzie and Carr require this court to apply a six-year statute of limitations to Walker’s wantonness claim, those decisions represent unconstitutional attempts by our supreme court to create a separate cause of action for wantonness, even though the Alabama Code does not enumerate such a claim, as well as a judicial attempt to amend the statute of limitations provided by the Alabama Code. As such, Capstone argues, McKenzie and Carr should be overruled.
“We will not address the merits of this contention. This court is bound by the decisions of our supreme court, and we are not at liberty to overrule those decisions or to choose not to follow them. See State Farm Mut. Auto. Ins. Co. v. Carlton, 867 So.2d 320, 325 (Ala.Civ.App.2001) (‘This court is bound by the decisions of the Alabama Supreme *81 Court, see § 12-3-16, Ala.Code 1975, and we have no authority to overrule that court’s decisions.’). We recognize that a majority of the members of the supreme court did not join the main opinion in Carr; however, as previously noted, Justice See’s opinion concurring in the result reached in Can* demonstrates that a majority of the members of the supreme court deciding that case were of the view that McKenzie provides that claims of wantonness are subject to a six-year statute of limitations. So long as McKenzie is binding on this court, we must and we will apply its holding.”
96 So.3d at 76-77.
Capstone petitioned this Court for a writ of certiorari, arguing that we should overrule McKenzie and reverse the judgment of the Court of Civil Appeals. The question presented is a pure question of law subject to de novo review by this Court. Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 200 (Ala.2001).

II. Analysis

A. Statute of Limitations

Specifically, the question presented is whether the six-year limitations period provided in § 6-2-34(1) is applicable to Walker’s claim that he was injured as a result of wanton conduct by Capstone. Section 6-2-34(1) provides:
“The following must be commenced within six years:
“(1) Actions for any trespass to person or liberty, such as false imprisonment or assault and battery.”
If Walker’s claim does not fall within the six-year limitations period provided in § 6-2-34(1), then, by default, it falls within the two-year period provided by the catchall provision of § 6-2-38(J), which states:
“All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.”
In applying the six-year statute of limitations of § 6-2-34(1) to Walker’s claim alleging that Capstone acted wantonly, there are only two decisions of this Court upon which the Court of Civil Appeals might have, and did, rely: McKenzie v. Killian, 887 So.2d 861 (Ala.2004), and Carr v. International Refining & Manufacturing Co., 13 So.3d 947 (Ala.2009) (plurality opinion). The main opinion in only one of those decisions, McKenzie, was joined by a majority of the Court so as to constitute a precedential decision of the Court. See, e.g., State ex rel. James v. ACLU of Alabama, 711 So.2d 952, 964 (Ala.1998) (“[N]o appellate pronouncement becomes binding on inferior courts unless it has the concurrence of a majority of the Judges or Justices qualified to decide the cause.”). As indicated, the main opinion in the other case, Carr, was a plurality opinion.
In McKenzie, this Court concluded that “wanton conduct is the equivalent in law to intentional conduct. Such an allegation of intent renders the six-year statutory period of limitations [i.e., § 6-2-34] applicable.” 887 So.2d at 870. Although the main opinion in Carr relied upon McKenzie, only four Justices joined the main opinion. Carr, 13 So.3d at 956. Four other Justices concurred in the result; the author of this opinion dissented. Id.
In a special writing concurring in the result in Carr, Justice See offered the view that “application [of McKenzie ] in this case is troubling.” 13 So.3d at 956 (See, J., concurring in the result). Justice See ultimately concluded, however, that he would concur in the result of the main opinion “because we have not been asked to overrule McKenzie.” 13 So.3d at 956-58. In the present case, we have been *82 asked to overrule McKenzie, and we do so for the reasons hereinafter discussed.
We first observe that McKenzie stands alone as an exception to the long line of cases that addressed the question of what statute of limitations was applicable to a claim of wantonness and that repeatedly answered that question by deciding that the two-year limitations period of § 6-2-38(0 was applicable. Examples of such cases decided during the two decades immediately before McKenzie was decided include the following: Jim Walter Homes, Inc. v. Nicholas, 843 So.2d 133, 135-36 (Ala.2002) (holding that a claim of wantonness was barred under § 6-2-38(l); Sanders v. Peoples Bank & Trust Co., 817 So.2d 683, 686 (Ala.2001) (claim of wantonness governed by two-year statute of limitations); Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800, 805 (Ala.1999) (“[A]n action alleging ... wantonness must be brought within two years of the accrual of the cause of action.”); Life Ins. Co. of Georgia v. Smith, 719 So.2d 797, 802-03 (Ala.1998) (claim of wantonness governed by two-year statute of limitations); Booker v. United Am. Ins. Co., 700 So.2d 1333, 1340 (Ala.1997) (“Because the [plaintiffs] filed their complaint in August 1993 — over two years after their claims accrued — their negligence and wantonness claims are time-barred.”); Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala.1993) (claim of wantonness “governed by the two-year statute” of limitations at § 6-2-38(()); Henson v. Celtic Life Ins. Co., 621 So.2d 1268, 1274 (Ala.1993) (“The statutory period of limitations for ... wantonness actions, found at ... § 6-2-38, is two years....”); Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992) (“An action alleging ... wantonness ... must be brought within two years after the cause of action accrued.”). See also Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 125 (Ala.2003) (“ ‘An action alleging ... wantonness ... must be brought within two years after the cause of action accrued.’ ” (Johnstone, J., concurring in part, concurring specially in part, and dissenting in part) (quoting Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992))).
Indeed, even in cases decided after McKenzie, this Court has applied a two-year statute of limitations to wantonness claims. See Boyce v. Cassese, 941 So.2d 932, 945-16 (Ala.2006), and Gilmore v. M & B Realty Co., 895 So.2d 200, 207-09 (Ala.2004). See also Malsch v. Bell Helicopter Textron, Inc., 916 So.2d 600, 601 (Ala.2005) (claim of wantonness subject to “unambiguous two-year statute[ ] of limitations”).
On June 3, 2011, when this Court originally issued an opinion in this case, then Chief Justice Cobb authored a dissenting opinion. That dissenting opinion is attached as an appendix to this opinion on rehearing. See 96 So.3d at 99-101.[2] In her dissent, Chief Justice Cobb referred to “years of ongoing confusion regarding the proper limitations period governing willful and wanton torts” that, according to her dissent, preceded this Court’s decision in McKenzie. Appendix, 96 So.3d at 100. The reality, however, is that, until McKenzie, no decision of this Court ever applied the six-year statute of limitations of § 6-2-34(1) to a claim of wantonness, as that term is now understood. Most of the cases reviewed in McKenzie and in the law-review article referenced in McKenzie *83 (Linda Suzanne Webb, Limitation of Tort Actions under Alabama Law: Distinguishing between the Two-Year and the Six-Year Statutes of Limitations, 49 Ala. L.Rev. 1049 (Spring 1998)), and to which then Chief Justice Cobb’s dissenting opinion apparently alluded, addressed the distinction between trespass and trespass on the case, and they did so for purposes other than ascertaining the applicable limitations period (e.g., determining the sufficiency of pleadings or of proof of a given claim). To the extent the issue of wantonness was addressed at all in such cases, it was not in the context of the applicable statute of limitations.[3]
Thus, the decisions of this Court before McKenzie and, with the exception of Carr, since McKenzie, that have addressed the specific question whether the two-year limitations period prescribed by § 6-2-38(l) is applicable to claims of wantonness have uniformly answered that question in the affirmative. That answer was compelled in those eases, as it is in this one, by the text of that and other statutes. As noted, § 6-2-38(£) plainly provides that “[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.” Walker’s claims alleging wanton conduct do not arise out of contract and do not implicate another enumerated action within § 6-2-38. As explained below, neither do they fall within the category of actions for “trespass” to which § 6-2-34(1) makes a six-year limitations period applicable.
In McKenzie, this Court quoted from Justice Jones’s dissenting opinion in Strozier v. Marchich, 380 So.2d 804, 809 (Ala.1980), in concluding that the issue presented in McKenzie turned on “ ‘the degree of culpability of the alleged wrongful conduct.’ ” McKenzie, 887 So.2d at 870. Insofar as it goes, we reaffirm this fundamental conclusion as sound. As both McKenzie and Strozier document, courts as a general rule have indeed moved from a causality-based distinction between actions labeled as trespass and trespass on the case to a culpability-based distinction, i.e., between intentional torts and those based in negligence. Acceptance of this conclusion, however, does not answer, but only begs, the separate question whether a claim of wantonness is a trespass claim for purposes of s 6-2-34(1).
With respect to this separate question, the author of this opinion observed as follows in his dissenting opinion in Carr:
“In discussing the transition from a jurisprudence that categorized causes of action based on the causal sequence of events to one that categorizes based on the culpability of the tortfeasor, one well known authority makes no mention of recklessness or wantonness, instead dividing actions merely between those involving intentional conduct and those involving negligence. See W. Page Keeton, Prosser and Keeton on the Law of Torts at 29-31 (5th ed.1984). Further, the discussion in Prosser explains that causes of action for trespass, assault and battery, and false imprisonment— in other words, causes of action of the very type addressed in § 6-2-3⅛.(1)— involve intentional conduct by the tort-feasor: ‘Terms such as battery, assault and false imprisonment, which were va *84 rieties of trespass, came to be associated with intent, and negligence emerged as a separate tort.... There is still some occasional confusion, and some talk of a negligent “assault and battery,” but in general these terms are restricted to cases of intent.’ Id. at 30 (footnote omitted). ‘“The intention to do harm, or an unlawful intent, is of the very essence of an assault, and without it there can be none.” ’ Id. at 30 n. 17 (quoting Raefeldt v. Koenig, 152 Wis. 459, 462, 140 N.W. 56, 57 (1912)). See also id. at 31 n. 18 (explaining that ‘assault and battery, false imprisonment, and trespass to land’ were ‘derived from trespass’).
“Our own cases likewise hold that the types of claims described in § 6-2-31(1) involve intentional harm to the plaintiff. See, e.g., Harper v. Winston County, 892 So.2d 346, 353 (Ala.2004) (explaining that the unconsented touching in an assault and battery must have been done intentionally); Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651 (Ala.1996) (false-imprisonment case). In contrast, ‘ “ ‘fwjantoness’ has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. ” ’ Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat’l Ins. Corp., 589 So.2d 1289, 1292 (Ala.1991)). ‘To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff’ Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998).”
Carr, 13 So.3d at 962-63 (Murdock, J., dissenting) (footnotes omitted; some emphasis added).
In Alfa Mutual Insurance Co. v. Roush, 723 So.2d 1250 (Ala.1998), cited in the above-quoted passage, this Court explained that wantonness involved recklessness and that intent to injure another was not an element of a claim alleging wantonness:
“ ‘Wantonness’ is statutorily defined as ‘[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others.’ Ala.Code 1975, § 6-ll-20(b)(3). Wantonness’ has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala.1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. Joseph v. Staggs, 519 So.2d 952 (Ala.1988).... Certain language in Lynn Strickland [Sales & Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala.1987),] suggested that a specific design or intent to injure the plaintiff was an element of a claim for wantonness. To the extent that Lynn Strickland, deviates from the statutory definition of wantonness, as followed by this Court, it is hereby overruled.”
723 So.2d at 1256 (emphasis added). See also Ex parte Thicklin, 824 So.2d 723 (Ala.2002) (citing Alfa v. Roush); Porterfield v. Life & Cas. Co. of Tennessee, 242 Ala. 102, 105, 5 So.2d 71, 73 (1941) (quoting Central of Georgia Ry. v. Corbitt, 218 Ala. 410, 411, 118 So. 755, 756 (1928), for the following proposition: “ ‘To constitute willful or intentional injury there must be a knowledge of the danger accompanied with a design or purpose to inflict injury, whether the act be one of commission or omission, while in wantonness this design or purpose *85 may be absent, and the act done or omitted with knowledge of the probable consequence, and with reckless disregard of such consequence. Alabama G.S.R. Co. v. Moorer, 116 Ala. 642, 22 So. 900 [ (1897) ]; Birmingham R. & E. Co. v. Bowers, 110 Ala. 328, 20 So. 345 [ (1896) ]; Louisville & N.R. Co. v. Anchors, Adm’r, 114 Ala. 492, 22 So. 279, 62 Am.St.Rep. 116 [ (1897) ].’ ” (emphasis added)).
Consistent with the foregoing, we note that the legislature employs the term “trespass” in § 6-2-34(1) in concert with the concepts of false imprisonment and assault and battery. We note the aforementioned historical derivation of the latter causes — requiring an intent to cause the actionable injury — as forms of trespass. We likewise find pertinent the doctrine of “noscitur a sociis,” which holds that “where general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous to that of the less general.” Winner v. Marion Cnty. Comm’n, 415 So.2d 1061, 1064 (Ala.1982) (citing State v. Western Union Tel. Co., 196 Ala. 570, 72 So. 99 (1916), and C. Sands, Sutherland Statutory Construction § 47.16 (4th ed.1973)).
It is true that this Court has stated that “[wjantonness is not merely a higher degree of culpability than negligence” and that negligence and wantonness “are qualitatively different tort concepts.” Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala.1987).[4] If we are to accept the difference in these concepts as qualitative in nature, however, then we certainly may accept the difference between wantonness and intent as qualitative in nature, and for that matter more distinctive.
That said, as Justice See observed in his special writing in Carr, questioning the conclusion reached in McKenzie that claims of reckless and wanton conduct ought to be treated the same as intentional-tort claims for statute-of-limitations purposes “does not require that wanton conduct be considered more closely akin to negligence than to an intentional tort; this Court has repeatedly held that wantonness is neither an intentional tort nor some form of ‘super-negligence.’ ” 13 So.3d at 958 n. 6 (See, J., concurring in the result). In other words, all that is required is that we be able to conclude that reckless or wanton conduct is not an intentional tort.[5]
*86 We are clear to the conclusion that recklessness and wantonness are fundamentally different concepts than intent, and that claims alleging reckless or wanton conduct are distinctively different types of claims than those alleging intentional harm to a plaintiff. We therefore cannot place claims of wantonness within the governance of § 6-2-34(1), which we interpret as imposing a six-year statute of limitations on the intentional torts described therein, i.e., “trespass to person or liberty, such as false imprisonment or assault and battery.” Concomitantly, we conclude that claims alleging reckless and wanton conduct fall within the governance of the catchall provision in § 6-2-38(1) providing a two-year limitations period for “[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section.”
Then Chief Justice Cobb’s dissenting opinion stated that “[t]he majority opinion simply puts forward the opposing arguments this Court rejected in McKenzie v. Killian, 887 So.2d 861 (Ala.2004).” Appendix to this opinion, 96 So.3d at 99-100. Such a view is simply incorrect. The basis for our decision in this case is a recognition that there is a difference between a claim of wantonness and an intentional tort. As Chief Justice Cobb conceded, McKenzie “detailed the law of trespass and trespass on the case.” Id. After concluding that the difference between trespass on the case and trespass is one of culpability rather than causation (again, a notion that we reaffirm today), McKenzie gave very little attention to — and no analysis of — the meaning of wantonness or the difference between a claim of wantonness and an intentional tort. The following con-elusory declaration is the extent of the Court’s treatment of this issue in McKenzie: “As the Court recognized in [Louisville & Nashville R.R. v.] Johns [, 267 Ala. 261, 101 So.2d 265 (1958) ], wanton conduct is the equivalent in law to intentional conduct.” 887 So.2d at 870.[6]
As did the Court in McKenzie, then Chief Justice Cobb relied in her dissenting opinion upon the views expressed by Justice Jones in a dissenting opinion in the 1980 case of Strozier v. Marchich, 380 So.2d 804, 806 (Ala.1980):
“ ‘ “The rationale for my view comports with the fundamental concepts of our fault-based system of tort law. One who injures another, or another’s property, as a result of conduct intentionally committed should be held to a higher degree of accountability than one who injures another through a simple lack of due care. Just as the former, because of its higher degree of culpability, carries a potential for punitive damages, so should it also carry a longer period within which to enforce accountability for such intentional wrong. One who knowingly sets into motion, by intentionally doing ... an act, a sequence of events resulting in reasonably foreseeable injury to another, whether the resulting injury is immediate or consequential, in my opinion, has committed a *87 trespass within the contemplation of the six-year statute of limitations.
“ ‘ “Indeed, I have searched in vain for possible alternative policy considerations for limiting the period of accountability in certain tort cases to one year and in other cases to six years. I submit that the only logical, as well as the only defensible, basis for this difference is the extent of the wrong or the degree of culpability.” ’ ”
Appendix, 96 So.3d at 100 (quoting McKenzie, 887 So.2d at 870, quoting in turn Strozier, 380 So.2d at 809-10 (Jones, J., dissenting) (emphasis omitted; emphasis added)).
The fundamental difficulty with the quoted passage is that it collapses the concept of wantonness into the concept of an intentional tort. It does so in part by ignoring the difference between intended acts and intended consequences, stating, for example, that “[o]ne who injures another ... as a result of conduct intentionally committed should be held to a higher degree of accountability than one who injures another through a simple lack of due care” and by its reference to “conduct intentionally committed” as an “intentional wrong.” 887 So.2d at 870. Subsequently, the passage refers to “intentionally doing ... an act” that results in only a “reasonably foreseeable injury to another” as a “trespass,” notwithstanding the fact that reasonable foreseeability clearly is a negligence standard. Id.
As already noted, this Court agrees, insofar as it goes, with the fundamental notion expressed at the end of the above-quoted passage, i.e., that “the only defensible basis” for applying a two-year statute of limitations to some conduct and a six-year statute of limitations to other conduct is “the degree of culpability” of the wrongdoer. We do so, however, not because we, like Justice Jones, have searched for, but been unable to find, “policy considerations” that would support a different conclusion, but because the legislature has made the policy choice for us by statute. Moreover, unlike Justice Jones, we cannot conclude that it is appropriate to conflate the concepts of wantonness and intent for purposes of assessing “the degree of culpability”

B. Stare Decisis

As in this case, this Court was asked in Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), to overrule a decision of this Court made only a few years earlier and thereby reaffirm a rule that had been recognized as the law of Alabama for many years before that recent decision.[7] In de *88 ciding to overrule the earlier decision, the Court in Foremost declared:
“Although this Court strongly believes in the doctrine of stare decisis and makes every reasonable attempt to maintain the stability of the law, this Court has had to recognize on occasion that it is necessary and prudent to admit prior mistakes and to take the steps necessary to ensure that we foster a system of justice that is manageable and that is fair to all concerned. See, e.g., Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975), in which Justice Shores, writing for this Court, stated: ‘As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them.’ ”
693 So.2d at 421.
Consistent with the foregoing, we overrule McKenzie to the extent that it holds that a claim of wantonness falls within the six-year statute of limitations now found in § 6-2-34(1). We once again reaffirm the proposition that wantonness claims are governed by the two-year statute of limitations now embodied in § 6-2-38(l).
In her dissenting opinion on original submission, then Chief Justice Cobb characterized as “particularly distressing” what she described as this Court’s “willingness to disregard the critical judicial policy of stare decisis” and to act as “some sort of ‘other legislature’ ” in the wake of composition changes in the Court. Appendix to this opinion, 96 So.3d at 101. On original submission we rejected, and we again reject, both these characterizations and their premise.
The stated premise for the Chief Justice’s “distress” was the notion that “the law in Alabama concerning the proper legal analysis of wantonness was not settled and was in fact based on confusing and inconsistent discussions of causality rather than culpability,” appendix, 96 So.3d at 101, prior to this Court’s decision in McKenzie and that “McKenzie represented a thorough and persuasive discussion of the proper legal policy to be applied.” Appendix, 96 So.3d at 101. As we have noted, McKenzie did provide “a thorough and persuasive discussion” of the propriety of distinguishing between “trespass” and “trespass on the case” based upon culpability rather than causality. It did not, however, present “a thorough and persuasive discussion” of the respective meanings of the terms wantonness and intent, or how the concepts represented by those terms relate to the language in § 6-2-34(1) and § 6-2-38(Z). Moreover, as also has been noted, for many years before McKenzie was decided, our cases consistently and expressly applied a two-year statute of limitations to claims of wantonness, just as they did after McKenzie was decided, with one exception. Even in that exception, a majority of this Court suggested with their vote that they had some concern regarding the analysis in McKenzie. See Carr, 13 So.3d at 956 (See, Stuart, Smith, and Bolin, JJ., concurring in the result); Carr, 13 So.3d at 959 (Murdock, J., dissenting). In the only opinion written by any of the four Justices who concurred in the result only, Justice See opined that if and when this Court were to be asked to revisit McKenzie, it would be appropriate to do so.
In revisiting and overruling McKenzie today, we find applicable not only the above-quoted admonition of Justice Shores repeated in Foremost, but also the admonitions of the United States Supreme Court in cases such as Citizens United v. Federal Election Commission, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010):
“[I]f the precedent under consideration itself depart[s] from the Court’s juris *89 prudence, returning to the ‘ “intrinsically sounder” doctrine established in prior cases’ may ‘better serv[e] the values of stare decisis than would following [the] more recently decided case inconsistent with the decisions that came before it.’ Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 231 (1995); see also Helvering [v. Hallock, 309 U.S. 106], at 119 [ (1940) ]; Randall [v. Sorrell, 548 U.S. 230], at 274 [ (2006) ] (Stevens, J., dissenting). Abrogating the errant precedent, rather than reaffirming or extending it, might better preserve the law’s coherence and curtail the precedent’s disruptive effects.”
_ U.S. at _, 130 S.Ct. at 921.
“ ‘[SJtare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a pri- or doctrine more embracing in its scope, intrinsically sounder, and verified by experience.’ Helvering v. Hallock, 309 U.S. 106, 119 (1940). Remaining true to an ‘intrinsically sounder’ doctrine established in prior cases better serves the values of stare decisis than would following a more recently decided case inconsistent with the decisions that came before it; the latter course would simply compound the recent error and would likely make the unjustified break from previously established doctrine complete. In such a situation, ‘special justification’ exists to depart from the recently decided case.”
Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 231-33, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (emphasis added) (considering the operation of stare decisis as to an issue of constitutional interpretation).[8]
For the reasons explained, McKenzie altered the law in a manner that, under well established principles concerning the operation of the doctrine of stare decisis, we are now impelled to overrule. If we did not follow these principles and overrule McKenzie, we would be enshrining in our law an erroneous decision. A failure by this Court to admit its error and to adhere to the policy choice that has been made by our legislature would be the course that would “undermine[] its judicial authority and equate[ ] th[is] Court with some sort of ‘other legislature’ to the detriment of all the courts in this State,” Appendix to this opinion, 96 So.3d at 101, and to the detriment of the doctrine of separation of powers.[9]

*90
C. Prospective Application

We now turn to the manner in which the rule we announced on June 3, 2011, and reaffirm today should be applied with respect to litigants as to whom the six-year limitations period previously announced by this Court in McKenzie has begun to run but has not yet expired. In this regard, we note that Walker’s claim was timely filed under the rule of law announced in McKenzie, but untimely if we were to apply retroactively to him the rule of law announced today.
Although the retroactive application of judgments is the usual practice,[10] “circumstances occasionally dictate that judicial decisions be applied prospectively.” Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997). In this context, “[t]he determination of the retroactive or prospective application of a decision overruling a prior decision is a matter of judicial discretion that must be exercised on a case-by-case basis.” Ex parte Coker, 575 So.2d 43, 51 (Ala.1990) (opinion on rehearing).
In First Tennessee Bank, N.A. v. Snell, 718 So.2d 20 (Ala.1998), this Court discussed
“certain factors a court should consider in deciding whether a judicial decision is to be applied nonretroactive. See Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (U.S.1971). We quoted the Chevron Oil factors in McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala.1996):
“ ‘ “First, the decision to be applied nonretroactive must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., [392 U.S. 481, 88 S.Ct. 2224, 2233, 30 [20] L.Ed.2d 1231 (1968),] ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969) ]. Second, it has been stressed that ‘we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.’ *91 Linkletter v. Walker, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737-38, 14 L.Ed.2d 601 (1965) ]. Finally, we have weighed the inequity imposed by retroactive application, for ‘[wjhere a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the “injustice or hardship” by a holding of nonretroactivity.’ ” ’
“687 So.2d at 165 (quoting Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 296 (1971)).”
718 So.2d at 24. Consistent with the aforesaid “Chevron factors,” “[a] decision overruling a judicial precedent may be limited to prospective application where required by equity or in the interest of justice.” 20 Am.Jur.2d Courts § 151 (2005). Compare Foremost, 693 So.2d at 421 (finding it “appropriate” to apply prospectively a decision overruling prior precedent and reinstating earlier rules as to the elements as to certain types of fraud claims and the standard for determining the date of accrual of such claims for statute-of-limitations purposes).
The above-discussed principles require that we not apply our ruling generally so as to immediately cut off the claims of persons who have been wantonly injured within the last six years and who therefore could have relied upon the rule this Court announced in McKenzie. Thus, for a person as to whom the six-year limitations period announced in McKenzie will, under the rule announced in the present ease, expire on a date less than two years from June 3, 2011 (the date of the original issuance of the Court’s opinion in this case), we conclude that it is just and equitable that the limitations period not be affected by our holding in this case. For a person whose limitations period would expire more than two years from June 3, 2011, however, equity does not require that that person have more time to bring his or her action than would a party whose cause of action accrued on that date. In other words, as a result of our holding, litigants whose causes of action accrued on or before June 3, 2011, the date of the original issuance by this Court of its opinion in this case, shall have two years from that date to bring their action, unless and to the extent that the time for filing their action under the six-year limitations period announced in McKenzie would expire sooner.
On rehearing, Capstone and two amici curiae seek to frame our holding in Part A of this opinion as “premised on a constitutional error in the [McKenzie ] Court’s interpretation of a purely legislative issue.” The argument of the amici curiae notes our citation to Foremost, but suggests that we should be guided instead by cases like Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432 (Ala.2001), and Jefferson County Commission v. Edwards, 32 So.3d 572 (Ala.2009):
“This case is different [from Foremost]. The Court’s decision here is premised on a constitutional error in the Court’s interpretation of a purely legislative issue. The Court has overruled McKenzie [v. Killian, 887 So.2d 861 (Ala.2004),] as we have seen, because that case breached the separation of powers....
“Conclusive guidance on prospective application thus comes, not from Foremost, but from constitutionally weighted cases like Lyles, supra, and Edwards, supra. Where constitutional issues are in play, this Court explained in Lyles, prospective decisions are ‘disfavored’:
“‘Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpreta *92 tion of the Constitution in a particular decision could take prospective form does not make sense.’
“Lyles, 797 So.2d at 439 (quoting Am. Trucking Ass’ns, Inc. v. Smith, 496 U.S. 167, 201 (1990) (Scalia, J., concurring)).”
Brief of Amici Curiae Business Council of Alabama and Alabama Defense Lawyers Association in Support of Application for Rehearing, at 6-7.
By asserting that “conclusive guidance” comes from cases such as Lyles and Edwards, the amici curiae appear to argue that the fact that an appellate decision is based upon constitutional principles allows for no other consideration in regard to whether that decision will be applied retroactively or prospectively. We note that neither case explicitly so holds. For its part, Lyles, upon which Edwards relied, stated that prospective application of such a decision is “disfavored.” It is not necessary for us to further address this issue, however, because, as discussed below, the predicate for the argument advanced by the amici curiae is faulty.[11]
This Court’s decision today is not based on the constitution, either state or federal, nor does it recognize any “constitutional error” in any prior decision. Our decision today is simply a matter of statutory construction. We recognize today that the statutory interpretation advanced in McKenzie was incorrect, and we supply today in its place a correct statutory interpretation. Contrary to the suggestion made by the invocation of the quoted passage from Justice Scalia’s special concurrence in American Trucking Ass’n v. Smith, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), this Court did not in McKenzie, nor do we in the present case, engage in some “interpretation of the Constitution”; rather, the analysis provided in both McKenzie and in the present case reflects merely an effort to discern correctly the legislative intent reflected in the language of §§ 6-2-34(1) and 6-2-38(l).[12]
The brief of the amici curiae in support of rehearing also seeks to diminish this Court’s concern with any potential unfairness of a fully retroactive application of our holding today by citing authority for the proposition that a legislature’s altera *93 tion of a limitations period does not as a general rule alter the plaintiffs substantive rights, but only the plaintiffs “remedy.” See brief of amici curiae, at 8-9. Of course, we are not concerned here with legislative action that, by its nature, makes “a new rule.”[13] Even a legislature, however, cannot shorten a limitations period to the point that it does not permit a reasonable time for the commencement of actions to vindicate already accrued claims. See Thomas v. Niemann, 397 So.2d 90, 93 (Ala.1981) (“[T]he legislature may create or shorten periods of limitation provided a reasonable time is allowed for existing causes of action to be brought.”); Cronheim v. Loveman, 225 Ala. 199, 201, 142 So. 550, 550 (1932); and Coleman v. Holmes, 44 Ala. 124, 125 (1870). See generally Pickett v. Matthews, 238 Ala. 542, 545, 192 So. 261, 264 (1939) (“[T]he right to the remedy must remain and cannot be curtailed after the injury has occurred and right of action vested, regardless of the source of the duty which was breached, provided it remained in existence when the breach occurred.”).
Based on the foregoing, we adhere to our conclusion that it would be unjust to announce a decision that applied retroactively so as to immediately cut off the right to bring suit upon any claim that had accrued more than two years prior to our original decision and that would not provide a reasonable transition to the rule announced then and reaffirmed today. The application for rehearing filed by Capstone and the brief in support thereof filed by the amici curiae provide us with no compelling reason to alter this conclusion.
Notwithstanding our rejection of the arguments made on rehearing as to why we should revisit our conclusion that our decision in this case should, as a general rule, have a prospective application, we are persuaded by the alternative argument of Capstone and the amici curiae that an exception should be made for Capstone itself. As Capstone argues:
“Despite its agreement with [Capstone], this Court has elected to apply this opinion prospectively only, meaning that Capstone will not receive the benefit from coming forward as the vehicle to allow for the correction of the law. Alabama jurisprudence recognizes that a prevailing party on appeal should be rewarded for its efforts in coming forward to correct erroneous decisions. This Court has previously determined that such a policy provides ‘an incentive for litigants to challenge existing rules of law that are in need of reform.’ Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala.1995) (quoting Prospective Application of Judicial Decisions, 33 Ala. L.Rev., 463, 473 (1982)).”
Capstone’s application for rehearing, at 2.
The amici curiae make a similar argument:
“Capstone has successfully petitioned this Court for a correction of the law— but will be denied relief in its own case. [The amici curiae] have found no other decision in which this Court rendered a judgment with that effect. Cf. Palm Harbor Homes, Inc. v. Turner, 796 So.2d 295, 297 (Ala.2001) (retroactive application of new decision to parties at bar would ‘reward[ ] the prevailing party on the appeal, thereby providing “an incentive for litigants to challenge existing rules of law that are in need of reform’”) (quoting Prof. Ins. Corp. v. *94 Sutherland, 700 So.2d 347, 352 (Ala.1997)).”
Brief of amici curiae Business Council of Alabama and Alabama Defense Lawyers Association, at 13.
Authorities cited by both Capstone and the amici curiae are reflected in the discussion of the issue of prospective application of an opinion adopted by this Court in Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008);
“ ‘ “The determination of the retroactive or prospective application of a decision overruling a prior decision is a matter of judicial discretion that must be exercised on a case-by-case basis.” Ex parte Coker, 575 So.2d 43, 51 (Ala.1990), citing City of Birmingham v. Blount County, 533 So.2d 534 (Ala.1988); State Dep’t of Revenue v. Morrison Cafeterias Consol., Inc., 487 So.2d 898 (Ala.1985). Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala.1996) (plurality opinion). “Retroactivity ‘is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it.’ ” 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991). While reliance upon prior law is an “important variable that must be appraised in every case presenting questions of prospectivity,” we conclude that, as a policy matter, the application of this newly adopted rule to these parties “rewards the prevailing party on the appeal, thereby providing ‘an incentive for litigants to challenge existing rules of law that are in need of reform.’ ” Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala.1995), quoting Prospective Application of Judicial Decisions, 33 Ala. L.Rev. 463, 473 (1982).’
“Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997).
“ ‘Because the rule stated in this opinion would change this Court’s construction of the limitations provision of § 6-5-547(a) and reject its previous construction of the statute, a construction [the plaintiff] may have relied on, we would apply this new rule prospectively only, i.e., to legal-malpractice actions filed after the date of this decision. See Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351-52 (Ala.1997); Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997); McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165-66 (Ala.1996).’
“Ex parte Panell, 756 So.2d 862, 869 (Ala.1999) (plurality opinion of three Justices, but all six remaining Justices concurred in the result, thus joining in the decision for prospective relief only).”
990 So.2d at 312-13 (adopting the reasoning of Justice Harwood’s special writing in Cline v. Ashland, Inc., 970 So.2d 755, 761 (Ala.2007)).
After discussing the factors outlined in Chevron Oil, Justice Harwood in his special writing in Cline, adopted by this Court in Griffin, continued:
“My view of the proper construction to be accorded the term ‘accrued’ in § 6-2-30(a) in the context of toxic-substance-exposure cases would establish a new principle of law by overruling clear *95 past precedent on which litigants may have relied. This consideration weighs in favor of a prospective application of the principle, as does the purpose of time limitations for filing actions. On the other hand, Cline, as the prevailing party in bringing about a change in the law should be rewarded for his efforts and to deny him the benefit of the new rule would have a chilling effect on litigants who desire to challenge existing rules of law that are in need of reform. Weighing the merits and demerits of the possible options for effectuating the new rule, I would recommend that it be accorded a completely prospective operation, save only for its application in Cline’s case, where it would apply retroactively. Therefore, except for Cline, only those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within two years of the opinion adopting the new rule would be entitled to have the accrual of their cause of action determined according to the new rule.”
Griffin, 990 So.2d at 313-14 (first emphasis in original; second emphasis added).
We see no reason to hesitate in following the same approach in the present case. As noted, Walker filed a complaint on July 10, 2007, alleging claims both of negligence and wantonness based on events that occurred on July 12, 2005, a date less than two years before the filing of the complaint (although it was later shown that the events in question occurred on June 6, 2005, and therefore more than two years before the filing of the complaint). There is no indication that Walker placed any particular reliance on the six-year limitations period announced in McKenzie in deciding when to file his complaint. Accordingly, we conclude that today’s decision should apply to Walker’s wantonness claim.

III. Conclusion

Based on the foregoing, the judgment of the Court of Civil Appeals reversing the summary judgment entered against Walker is reversed; the case is remanded for the entry of a judgment by the Court of Civil Appeals affirming the judgment of the trial court.
APPLICATION GRANTED; OPINION OF JUNE 3, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
STUART, BOLIN, PARKER, SHAW, and WISE, JJ., concur.
MURDOCK and MAIN, JJ., concur specially.

. On appeal to the Court of Civil Appeals, Walker abandoned his claim of negligence. 96 So.3d at 73 n. 2.

. The Court’s opinion on original submission responded to some of the views expressed in that dissent. Because those responses made for a more thorough and sifting explanation of the Court's holding and rationale in this case, we have appended then Chief Justice Cobb's dissenting opinion and retained the response in this opinion on rehearing.

. In W.T. Ratliff Co. v. Henley, 405 So.2d 141 (Ala.1981), this Court discussed a statute-of-limitations issue, but its discussion of this issue related to a claim other than the claim of wantonness discussed later in the opinion. The opinion contained no analysis as to the appropriate limitations period with respect to the claim of wantonness. Also, the underlying tort was a trespass to land governed by § 6-2-34(2), Ala.Code 1975, not a trespass to the person or liberty of another as in the present case.

. This Court indicated in Lynn Strickland that this "difference in quality rather than in degree” is rooted in a "difference of degree ... so marked as to amount substantially to a difference in kind”:
"This ‘difference in quality rather than in degree' is well recognized and firmly established by leading authorities on tort law. Restatement (Second) of Torts § 500 comment g (1965), provides, in part, that '[t]he difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.' "
Lynn Strickland, 510 So.2d at 146.

. Whether wantonness and intent are in some respects more similar to one another than are negligence and recklessness is not the question we must answer. It is not as if we have before us a statute of limitations of two years for negligence and a statute of limitations of six years for intentional acts, with these two options as our only choices and our task being simply to decide to which of these two types of wrongful conduct a wanton act is more similar. Instead, we have at issue a specific statute that prescribes a six-year statute of limitations for intentional torts and a catchall statute prescribing a two-year statute of limitations for all torts not expressly referenced in the former statute or some similar specific statute. Under the choices made for us by the legislature, our task is simply to decide if wantonness is intent. If it is, a *86 claim alleging it falls within the former statute; if, by definition, it is something different, a claim alleging it falls outside that statute. Plainly, it is something different.

. In Louisville & Nashville R.R. v. Johns, 267 Ala. 261, 101 So.2d 265 (1958), this Court was concerned with whether the plaintiff had satisfied common-law pleading requirements in a complaint attempting to assert corporate liability for the wanton acts of its employee where the corporate defendant had not directly participated in the act. In addition, that case was decided based on a causality-based view of trespass and trespass on the case, rather than the modern culpability-based view. See Johns, 267 Ala. at 276-77, 101 So.2d at 279-80.

. Like the present case, one of the issues presented in Foremost related to the proper operation of a statute of limitations. In this regard, the specific issue presented in Foremost was when a fraud cause of action "accrued” under Ala.Code 1975, § 6-2-30(a), so as to trigger the running of the limitations period of § 6-2-38(Z). Before 1989, the Court had construed the term "accrued” in that context to mean that "a fraud claim accrued, thus commencing the running of the statutory limitations period, when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care.” 693 So.2d at 417. Under the combined effect of Hickox v. Stover, 551 So.2d 259 (Ala.1989), and Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458 (Ala.1991), that judicial interpretation was changed so that the theretofore recognized "reasonable-reliance” standard was replaced by a “justifiable-reliance” standard. Under that new standard, a person’s reliance was to be judged only by what he or she actually knew of facts that would have put a reasonable person on notice of fraud. 693 So.2d at 418. The .Court determined in Foremost that the so-called “reasonable-reliance” standard was in fact the proper construction for the statutory term "accrued” and overruled Hick-ox and Hicks on that point.

. "Stare decisis is not an inexorable command.
"Particularly where a precedent or series of precedents has been treated as authoritative for a long time, courts are generally reticent to deviate from that policy, especially where the precedent has been followed for a long period of years.
[[Image here]]
"... A court may overrule precedent after reviewing the plausibility of the existing interpretation of a statute, the extent to which that interpretation has been fixed in the fabric of the law, and the strength of arguments for changing the interpretation.”
20 Am.Jur. Courts § 131 (2005).

. What would be truly "distressing” would be if, when this Court has made an error as it did in McKenzie, it would be unwilling to "confess” that error and set the law right.
In the 17 months prior to the original issuance of the opinion in this case on June 3, 2011 (i.e., the period dating back to the beginning of 2010), this Court had issued opinions in 9 cases overruling preexisting precedent. See Williams v. State, 73 So.3d 738 (Ala.2011); Ex parte Rogers, 68 So.3d 773 (Ala.2010); Hutchinson v. State, 66 So.3d 220 (Ala.2010); Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89 (Ala.2010); Elliott v. Navistar, Inc., 65 So.3d 379 (Ala.2010); DGB, LLC v. Hinds, 55 So.3d 218 (Ala.2010); Riley v. Cornerstone Cmty. Outreach, 57 So.3d 704 *90 (Ala.2010); Robertson v. Gaddy Elec. & Plumbing, LLC, 53 So.3d 75 (Ala.2010); and Teer v. Johnston, 60 So.3d 253 (Ala.2010). Although there were in fact composition changes in the Court between the date of the precedent overruled and the decision overruling it, most of those cases overruling prior decisions were rendered by a unanimous vote of the Court. In each of them, the Court, as it does today, felt compelled to overrule one or more prior decisions based on its good-faith belief that doing so comported with well established principles relating to the doctrine of stare decisis and was necessary to set the law right. In none of them did any member of this Court challenge the decision of those in the majority as being a function of anything other than such a good-faith belief. Such a challenge would have been ill-conceived in each of those cases, just as it was in the present case.

.“[RJetroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala.1996) (plurality opinion). 'Retroactivity "is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it.”' 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991).”
Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997).

. We also note that Lyles is distinguishable in that the "retroactivity issue” confronting the Court in Lyles was not, as here, how to apply the immediate decision of this Court overruling one of its own previous decisions. Instead, the question in Lyles was whether to apply to the case before it what the Court referred to as an "outcome-determinative change in the positive law” provided by an external source, namely a decision of the United States Supreme Court as to the meaning of the Eleventh Amendment to the United States Constitution. 797 So.2d at 438. Because that decision was rendered by the United States Supreme Court before this Court "heard” the appeal in Lyles, this Court answered that question in the affirmative. Id. at 439.

. The only reference in our analysis to a constitution comes in response to the view expressed by former Chief Justice Cobb in her dissenting opinion on original submission (see appendix to this opinion, 96 So.3d at 99-101) that the course followed in our original decision — and our decision today — itself represents action by this Court as "some sort of 'other legislature’ " in violation of the separation-of-powers provision of the Alabama Constitution. Specifically, in Part II.B., we first discuss the principles that surround and inform the doctrine of stare decisis and conclude that that doctrine does not prevent our overruling McKenzie in this case. We then reason that, because the doctrine of stare decisis does not prevent us from overruling McKenzie, if we did not overrule McKenzie today and announce a statutory interpretation that comports with our understanding of legislative intent, that would be the course that would in fact place this Court in the position of acting, in the words of then Chief Justice Cobb, as "some sort of 'other legislature.' ” Appendix to this opinion, 96 So.3d at 101.

. " 'Legislation ... looks to the future and changes existing conditions by making a new rule....’” New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 370-71, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908)).